IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TOMMIE L. CATLEDGE, )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. 09-00606-KD-N
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
    Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Tommie L. Catledge filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that he was not entitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-433 and 1381-1383c, respectively. This action has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was held on July 21, 2010 before the undersigned Magistrate Judge. Present at the hearing were Colin Edward Kemmerly, Esq., counsel for the plaintiff, Tommie L. Catledge and AUSA Patricia Beyer, counsel for defendant. Upon consideration of the arguments of counsel, the administrative record (doc. 11), the parties' respective briefs (docs. 12 and 13), and plaintiff's supplement (doc. 17), the undersigned recommends that the decision of the Commissioner be **REVERSED** and **REMANDED**.

1

I. Procedural History.

Plaintiff filed an application for disability insurance benefits on December 21, 2006, claiming an onset of disability as of July 12, 2001 (Tr. 93-94). Plaintiff was forty-seven years old at the time he filed his application (Tr. 93-94). The application was denied on March 15, 2007 (Tr. 96) and plaintiff requested a hearing (Tr. 104) before an Administrative Law Judge ("ALJ"). Following a hearing on December 2, 2008 (Tr. 49-78), the ALJ issued an unfavorable decision on January 21, 2009 (Tr. 11-25). Plaintiff requested a review by the Appeals Council (Tr. 9-10) which was subsequently denied on August 28, 2009 (Tr. 1-4), thereby making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (2009). Plaintiff has exhausted all his administrative remedies and now appeals from that final decision.

Issues on Appeal.

1. Whether the ALJ erred by failing to assign controlling weight to the opinion of plaintiff's treating physician.

2. Whether the ALJ erred by adopting the conclusions of a non-medical State agency reviewer to support a physical light exertional maximum residual functional capacity.[1]

---

[1] Plaintiff incorporates in this issue a complaint that the ALJ "failed to comment on a final prior Social Security Administration decision from 4/28/05 that Plaintiff is restricted from performing less than a full range of sedentary work" and a footnote claiming to have "requested re-opening of his prior application" in a letter dated November 21, 2008. Plaintiff's Brief (Doc. 12) at 2 and n. 1. Plaintiff's prior application received an unfavorable decision of April 28, 2005 (Tr. 79-92) and plaintiff did not request review by the Appeals Council. Consequently, contrary to plaintiff's contention, the ALJ did comment to the extent she advised that the doctrine of collateral estoppel precluded plaintiff from reopening his prior claim and that "no new and material evidence bearing on that period has been submitted" (Tr. 14-15). *See also* 20 C.F.R. § 404.987(a), which specifies that, if a claimant does not request Appeals Council review within sixty-days of the ALJ decision, "you lose your right to further review and that determination or decision becomes final." In addition, This Court is without jurisdiction to review any decision by the Commissioner to refrain from reopening a prior claim for benefits. *See*, Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996)("Federal courts generally lack jurisdiction to review
(Continued)

II. Findings of Fact and Conclusions of Law.

   A. Statement of Facts.

      1. Alleged Impairment and Medical Evidence.

Plaintiff alleged that he became disabled on July 12, 2001 (Tr. 118), due to residual pain from a lower back injury (Tr. 149). Although plaintiff argues that the ALJ erred with respect to the weight given various medical opinions, he does not specifically challenge the ALJ's summary of the medical evidence proffered in this case, as follows:

> The medical evidence of record reflects that the claimant has degenerative disc disease of the lumbar spine with L3-4 disc extrusion and fragment descending to upper L4. This is documented by an MRI scan of his lumbar spine performed in August 2001 and a CT myelogram of the lumbar spine performed in February, 2002. The August, 2001 MRI scan revealed L3-4 central degenerative disc extrusion with a subligamentous fragment extending interiorly posterior to the upper L4 vertebral body and an L2-L3 mild diffuse disc bulge, symmetrically flattening the ventral canal, without any central stenosis or nerve root impairment. There was minimal facet hypertrophy in the lumbar spine. (Exhibit B11F [Tr. 229-235]).
>
> The evidentiary record reflects that the claimant presented to a pain management physician in February, 2005 for treatment of chronic low back pain. The claimant's physical examination at that time revealed that the claimant's gait was normal, that his posture was slightly flexed, that he was able to perform any heel or toe walking, that his range of motion in the lumbosacral spine was severely limited in all quadrants with flexion and extension but there was no instability located in his spine, his muscle strength was normal, and he had normal lordotic curve. The pain management physician prescribed the claimant a muscle relaxant and recommended that he undergo bilateral lumbar facet joint injections. In

---

a decision by the Secretary to refrain from reopening a prior claim for benefits."), *citing* Califano v. Sanders, 430 U.S. 99, 107-09 (1977). Finally, plaintiff fails to cite to any evidence establishing that the aforementioned letter dated November 21, 2008 was ever transmitted, a fact denied by the Commissioner.

May, 2005, the physician reported that the claimant's pain had decreased following a series of facet nerve blocks in March and April 2005 and the physician recommended that the claimant undergo continuing injection therapy to include radiofrequency ablation at L2 through L5 levels bilaterally. The evidentiary record contains no further treatment records from the pain management physician after May, 2005. (Exhibit B11F [Tr. 229-235]).

There is no evidence that the claimant sought or received any medical treatment for his back pain or for any other physical condition during the period June, 2005 to February 2007. The documentation of record establishes that the claimant first sought treatment of his chronic low back pain at the Mobile County Health Department in February 2007. (Exhibit B16F [Tr. 262-274]). The treatment records from the health department reflect that the claimant has been followed medically by Dr. Gregory Evans at the health department on a regular basis for his back pain since February, 2007 and that Dr. Evans has treated the claimant conservatively with a combination of pain medications, arthritis medications, and muscle relaxants. (Exhibit B18F [Tr. 276-293]).

The record reflects that, on March 8, 2008, Dr. Evans completed a Physical Capacities Evaluation (PCE) form on the claimant's behalf in which he opined that the claimant could sit for a total of 2 hours at one time and sit for a total of 2 hours during an 8-hour workday. Dr. Evans further opined that the claimant could stand/walk for a total of 4 hours during an 8-hour workday. He further indicated that the claimant could lift up to 5 pounds for a total of 4 hours during an 8-hour workday, that the claimant could carry up to 5 pounds for a total of 2 hours during an 8-hour workday, that he could lift 6 to 10 pounds for a total of 3 hours during an 8-hour workday, and that he could carry 6 to 10 pounds for a total of 1 hour during an 8-hour workday. Dr. Evans placed no limitation on the claimant's abilities to use his arms/hands or legs/feet for repetitive movements but he indicated that the claimant could only bend for a total of 2 hours during an 8-hour workday, that he could only squat for a total of one hour during an 8-hour workday, and that he was unable to crawl, climb or reach. (Exhibit B17F [Tr. 275]).

At the request of the Social Security Administration, the claimant underwent a consultative physical examination by Dr. John T. Houston in February, 2007. On physical examination of the claimant, Dr. Houston noted that the claimant had full range of motion of all joints except the dorso-lumbar spine, that he had positive seated straight leg raises test on the right, that his motor strength was normal, that he had no atrophy in any

4

extremity, and that his gait was steady and without limitations. Dr. Houston concluded that the claimant had no impairment in his abilities to sit, stand for short periods, walk for short distances, life and carry light loads, handle light objects, hear, or speak. (Exhibit B13F [Tr. 238-239]).

The claimant underwent a consultative orthopedic examination by Dr. William A. Crotwell, III on August 19, 2008. On physical examination of the claimant, Dr. Crotwell reported that the claimant was able to get up and move around without difficulty, that he had limited range of motion with poor attempt, that he could toe and heel walk normally, that he had no tenderness or spasms, that he has decreased sensory over the right thigh but his motor testing revealed no abnormalities, that he was able to perform seated straight leg raise testing with no pain at all, and that there was no evidence of any muscle atrophy in the lower extremities. X-rays of the claimant's lumbar spine obtained by Dr. Crotwell showed some mild scoliosis with no disc space collapse or spurring. Dr. Crotwell stated his diagnostic impression as "history of lumbar strain" and "history of lumbar degenerative disc disease with no objective evidence whatsoever." Dr. Crotwell concluded his narrative report by stating that the claimant could "carry out medium, could carry out light, and could definitely carry out sedentary. He could definitely work an eight hour work day without any difficulty." (Exhibit B19F [Tr. 294-296]).

In conjunction with his overall examination of the claimant, Dr. Crotwell completed a Physical Capacities Evaluation (PCE) form in which he provided his opinions regarding the claimant's specific physical capacities and limitations. In that form, Dr. Crotwell opined that the claimant could sit, stand, and walk for a total of 8 hours each during an 8-hour workday, that he could continuously lift 21 to 25 pounds, continually carry 11 to 20 pounds, frequently lift 26 to 50 pounds, frequently carry 21 to 25 pounds, occasionally lift 50 to 100 pounds, and occasionally carry 25 to 50 pounds. Dr. Crotwell placed no limitations on the claimant's abilities to use his hands and feet for repetitive movements and opined that the claimant could continuously reach and frequently bend, squat, crawl and climb. With respect to environmental limitations, Dr. Crotwell opined that the claimant's activities involving unprotected heights were moderately restricted but that his activities involving being around moving machinery and driving automotive equipment were only mildly restricted. (Exhibit B19F [Tr. 294-296]).

2. Plaintiff's Testimony.

5

Plaintiff testified that he was 49 years old, had a driver's license, was unmarried, and had two children for whom he paid no child support (Tr. 54-55). Plaintiff further testified that he had received a workers' compensation settlement in 2001 in the amount of $55,000.00 but that none of the money was left. Plaintiff indicated that he had no current income other than $178 per month in food stamps (Tr. 61-62), that he lived in a house owned by his mother and that his mother and his fiancee paid his utilities (Tr. 62). Regarding how his back pain affects his functioning, plaintiff testified that he could "sit for [an] hour or two," stand for "30 to 40 minutes," and walk for "[m]aybe about 10 or 15 minutes" (Tr. 65-66). Plaintiff also testified that he takes medications for his low back pain and periodically receives pain shots from his physicians which he claims only temporarily eases his pain. (Tr. 64). Plaintiff stated that he goes to church every Sunday and that the services are from "eight to eleven" (Tr. 67). Plaintiff also testified that he had been using a cane given to him by a friend to walk with "over a year" (Tr. 67).

      3. <u>Vocational Expert Testimony</u>.

Barry Murphy testified as a vocational expert at plaintiff's administrative hearing (Tr. 68-76). According to Mr. Murphy, plaintiff's past relevant work as a packer had been unskilled and of both light and medium exertion (Tr. 68). Mr. Murphy also testified that plaintiff's past work as a janitor/maintenance person had been unskilled and of medium exertion (Tr. 69). When the ALJ posed a hypothetical question based on a person who was limited to performing light work, with some postural limitation, and who required a cane to ambulate (Tr. 69-70), Mr. Murphy indicated that such a person could

not perform plaintiff's past relevant work, but could perform other unskilled light work such as cashier, non-postal mail clerk, or parking lot attendant (Tr.70-72).

    4. The ALJ's Decision.

The ALJ found that plaintiff's degenerative disc disease of the lumbar spine and L3-4 extrusion with fragment descending to upper L4 were "severe" impairments (Tr. 17, Finding No. 3), but that these impairments did not meet or medically equal any of the listed impairments of 20 C.F.R., pt. 404, subpt. P, app. 1 (Tr. 20, Finding No. 4). The ALJ also found that plaintiff's subjective allegations of pain and functional limitations were not totally credible (Tr. 22), and further found that plaintiff retained the residual functional capacity ("RFC") to perform work at the light level of exertion, with use of a cane for ambulation (Tr. 20, Finding No. 5). The ALJ expressly adopted the RFC proposed by a non-medical State Agency consultant, Paula Montgomery, which the ALJ declared to be "consistent with and supported by the information contained in Dr. Crotwell's consultative examination report" and "the best evidence of record of the claimant's physical capacities and limitations during the relevant period under consideration" (Tr. 21, *citing* Tr. 254-261). The ALJ's hypothetical to the vocational expert was based upon Montgomery's proposed RFC (Tr. 69-70) and based on the vocational expert's testimony, the ALJ concluded that, although plaintiff's residual functional capacity precluded him from performing any of his past relevant work (Tr. 23, Finding No. 6), there were other jobs which plaintiff could perform (Tr. 24, Finding No. 10). Consequently, the ALJ found that plaintiff was not disabled as defined by the Social Security Act (Tr. 25, Finding No. 11).

B. Conclusions of Law.

1. Standard of Review.

In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).

2. Sequential Evaluation Process.

An individual who applies for Social Security disability benefits or supplemental security income must prove their disability. *See* 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven their disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At the first step, the claimant must prove that he or she has not engaged in substantial gainful activity. At the second step, the claimant must prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If, however, the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity and age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also* Hale v.

9

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (*citing* Francis v. Heckler, 749 F.2d 1562,

1564 (11th Cir. 1985)).

   3. Discussion.

      a. **The ALJ properly discounted Dr. Evans' opinion.**

   Plaintiff essentially argues that Dr. Evans' opinion was entitled to controlling weight solely because he was plaintiff's treating physician. Plaintiff's Brief (Doc. 12) at 6-9. Although he also alleges that Dr. Evans' opinion is "well supported and not inconsistent with other substantial evidence in the case record" (*Id*. at 8), plaintiff never addresses the following inconsistencies identified by the ALJ:

> In the present case, a review of the documentary medical evidence of record reflects that Dr. Evans' opinion in the PCE form are not supported or corroborated by the information contained in his treatment records. At the time he completed the PCE form on the claimant's behalf, Dr. Evans had been treating the claimant for one year. However, a review of Dr. Evans' treatment records reveals that, although Dr. Evans repeatedly noted in the treatment records that claimant's musculoskeletal examination and/or examination of his lumbar/lumbosacral spine "exhibited abnormalities," Dr. Evans never explained what those abnormalities were. The treatment records indicate that the claimant saw Dr. Evans for chronic back pain and was treated conservatively with prescribed medications but the treatment notes do [not] contain any specific clinical examination findings to support the harsh physical restrictions Dr. Evans placed on claimant's activities in the PCE form. The undersigned further finds it necessary to discount Dr. Evans' opinions in the PCE form due to internal inconsistencies within the form itself. For example, Dr. Evans placed no restriction on the claimant's ability to use his arms and hands for repetitive grasping, pushing, pulling, or fine manipulation, yet he indicated that the claimant was unable to reach. Additionally, Dr. Evans indicated that the length of time claimant could sit, stand, and walk at one time was the same as the amount of time he could sit, stand, and walk during an 8-hour workday. Generally, an individual's capacity for sitting, standing or walking at one time will be less than what it is for a full 8-hour workday. For all the foregoing reasons, the undersigned is unable to assign any significant evidentiary weight to Dr. Evans' opinions regarding the claimant's functional capacities and limitations.

(Tr. 21-22). Plaintiff neither addresses these inconsistencies nor attempts in any way to specifically demonstrate how the evidence of record could be deemed to be consistent with Dr. Evans' opinions in the PCE form he completed.

Moreover, plaintiff often reported to Dr. Evans that his pain level was a "3" on a scale of 1 to 10 (Tr. 262, 266, 268, 272), which suggests that whatever pain plaintiff may have experienced was well controlled. *See* Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988)(a medical condition that can be remedied by surgery, treatment, or medication is not disabling).

In addition, plaintiff does not dispute that Dr. Evans provided only conservative treatment in the form of prescribed medication; there is no indication that he ever considered or discussed other appropriate treatments such as physical therapy, injections, nerve root blocks or surgery. In Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996), the Eleventh Circuit found no error in the ALJ's rejection of the claimant's testimony about his pain because his "course of treatment for his spinal, heart and thyroid conditions during the period in issue were entirely conservative in nature." *See also*, Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991)("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)(Treating physician's opinion was properly discounted because the clinical evidence contradicted the opinion).

b. **The ALJ erred in adopting the disability examiner's opinion.**

The ALJ acknowledged that he considered opinion evidence which included "the findings of fact made by the State Agency medical and disability consultants . . . who completed an assessment of the claimant's physical capacities and limitations based on a review of the evidentiary record as it existed in March, 2007" (Tr. 20). The ALJ specifically noted that, as non-examining sources, the State Agency consultants opinions were not entitled to controlling weight, but that "they can be considered and weighed as those of highly qualified sources who are experts in the evaluation of medical issues in disability claims under the Social Security Act" (Tr. 21). The ALJ specifically found that the consultants' opinions were consistent with the credible medical evidence of record, including the information contained in Dr. Crotwell's consultative examination report, while there existed no credible contradictory opinion from any treating or other examining source, including Dr. Evans' opinion regarding plaintiff's functional capacities and limitations which were inconsistent with the record as a whole and not fully substantiated by the evidentiary record (Tr. 21). The Eleventh Circuit has held that:

> [T]he ALJ did not err by giving substantial weight to the opinions of the non-examining physicians. The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources. Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991). In this case, because those opinions did not conflict with the opinions of examining sources, the ALJ did not err in giving these opinions significant weight.

Milner v. Barnhart, 275 Fed.Appx. 947, 948 (11th Cir. 2008). *See also* Good v. Astrue, 240 Fed.Appx. 399, 403 (11th Cir. 2007)("[T]he ALJ was required to consider the findings of non-examining agency consultants, which also were inconsistent with Garcia's opinion) *citing* 20 C.F.R. § 404.1527(f)(2)(i); Jackson v. Astrue, 2010 WL 2629486 (M.D. Ala. June 30, 2010)("the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources"), *citing* Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991). However, in each of these cases, the non-examining source was a medical consultant.

In Foxx v. Astrue, 2009 WL 2899048 (S.D. Ala. Sept. 2, 2009), the court concluded that the opinion of a non-medical State Agency consultant is entitled to no weight. "[A] SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources." Foxx, 2009 WL 2899048 at * 7, *citing*, Bolton v. Astrue, 2008 WL 2038513 (M.D. Fla. May 12, 2008); Velasquez v. Astrue, 2008 U.S. Dist. LEXIS 64743, 2008 WL 791950 (D.C. Colo., Mar. 20, 2008); Casey v. Astrue, 2008 WL 2509030 (S.D. Ala. June 19, 2008) (an RFC assessment completed by a disability specialist is entitled to no weight); Hall v. Astrue, 2007 U.S. Dist. LEXIS 95776 (S.D. Ala. Nov. 7, 2007) (holding that the opinion of a disability examiner "simply does not supply the substantial evidence needed to support the ALJ's determination".)

Although the ALJ referred to the consultative medical opinions of Dr. John T. Houston (Tr. 238-239) and Dr. William A. Crotwell (Tr. 294-296), which were based on each physician's physical examination of the plaintiff, he expressly adopted the RFC

13

proposed by Paula Montgomery (Tr. 21). There is no evidence in this record that Ms. Montgomery is a qualified medical source. The ALJ, however, considered the Montgomery RFC (Tr. 254-261) to be the "the best evidence of record of the claimant's physical capacities and limitations during the relevant period under consideration" (Tr. 21). The Commissioner argued that the ALJ's approach was proper because the Montgomery RFC was more restrictive than either Dr. Houston's or Dr. Crotwell's assessment, and because the RFC by plaintiff's treating physician, Dr. Evans, was properly discounted. The Commissioner's argument is appealing, but only on the surface. Upon closer scrutiny, the evidence reflects that Dr. Houston merely opined that his examination of the plaintiff revealed "[n]o impairments in ability to sit, stand for short periods, walk short distances, lift and carry light loads, handle light objects, hear or speak" (Tr. 239). Similarly, Dr. Crotwell merely opined that "this patient could carry out medium, could carry out light and could definitely carry out sedentary. He could work an eight hour day without any difficulty" (Tr. 296). Although the RFC adopted by the ALJ appears to place more restrictions and limitations on the plaintiff than Dr. Crotwell and Dr. Houston have imposed, there is no medical opinion, either by an examining or non-examining medical source which supports the specific restrictions and limitations imposed by the ALJ. Consequently, the ALJ improperly accorded weight to Paula Montgomery's proposed RFC and his determination that plaintiff could perform "a wide range of unskilled work at a light exertional level" (Tr. 24) is, therefore, not supported by substantial evidence. *See*, Collins v. Astrue, 2010 WL 2573510, * 4 (S.D. Ala. June 22, 2010)("The elimination of the Cardiologist's conclusions left the ALJ with an RFC which

has only support from a non-examining, non-medical source [which] 'alone does not constitute substantial evidence to support an administrative decision'."), *quoting*, Swindle v. Sullivan, 914 F.2d 222, 226 n. 3 (11th Cir. 1990); Jackson v. Astrue, 2010 WL 2573508, * 7 (S.D. Ala. June 21, 2010)("Given that the ALJ improperly accorded weight to the RFC assessment completed by a disability specialist, his determination that plaintiff has the RFC to perform the physical requirements of her previous work as a "housekeeper" is not supported by substantial evidence."). Accordingly, the ALJ's decision is not supported by substantial evidence and is due to be reversed and remanded.

III.    Conclusion.

For the reasons stated above, it is hereby RECOMMENDED that the decision of the Commissioner of Social Security denying plaintiff's benefits be **REVERSED** and the case **REMANDED** for further proceeding not inconsistent with this decision.

In light of the foregoing, and the plain language of sentence four of 42 U.S.C. § 405(g), the undersigned Magistrate Judge recommends that this cause be reversed and remanded pursuant to sentence four of § 405(g) for further proceedings. *See* Melkonyan v. Sullivan, 501 U.S. 89, 99-102 (1991)(Discussing distinction between sentence four and sentence six remand under 42 U.S.C. § 405(g).). A remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, and terminates this Court's jurisdiction over this matter. *See* Shalala v. Schaefer, 509 U.S. 292, 297 (1993)(A district court remanding a case pursuant to sentence four of § 405 must enter judgment in the case and may not retain jurisdiction over the administrative proceedings on remand.)

The attached sheet contains important information regarding objections to this Report and Recommendation.

Done this   28th   day of July, 2010.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded).** Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this 28th day of July, 2010.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE